UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOHNNY TYSON,

      Petitioner,

v.                                    Case No. 4:19cv400-WS-HTC

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Respondent's motion to dismiss Petitioner Johnny Tyson's *pro se* amended petition for habeas corpus relief under 28 U.S.C. § 2254. ECF Doc. 14. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). Upon review of the amended petition (ECF Doc. 6), the motion to dismiss, and Petitioner's response (ECF Doc. 20), the undersigned recommends the motion to dismiss be GRANTED and this case dismissed as untimely.

## I.    BACKGROUND

Tyson, an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Calhoun Correctional Institution ("Calhoun CI"), files this

habeas action challenging his 2012 convictions in the Second Judicial Circuit Court for Leon County for battery and lewd and lascivious battery on minor victim, A.B.[1]

Tyson was charged by a second amended Information in Leon County circuit court case number 2010-CF-224 as follows: Count I, Sexual battery of A.B. by multiple perpetrators, contrary to Sections 794.023 and 794.0115(5), Florida Statutes; and Count II, Lewd or lascivious battery of A.B., a child twelve years of age or older but less than sixteen, in violation of Section 800.04(4)(a), Florida Statutes.  ECF Doc 14-1 at 38.  Tyson proceeded to a jury trial which concluded on April 5, 2012.  (State trial transcript begins in ECF Doc. 14-2 at 1).  As to Count I, the jury returned a verdict of guilty of battery, a lesser-included misdemeanor offense.  As to Count II, the jury found Tyson guilty as charged of lewd or lascivious battery on a person twelve or older but less than sixteen, a second-degree felony punishable by up to fifteen (15) years.  ECF Doc. 14-1 at 105-06.  However, the sentencing court found him to be a habitual felony offender and prison releasee re-offender and enhanced his sentence to thirty (30) years' imprisonment.  *Id.* at 119-20.

Tyson filed a timely appeal and the First District Court of Appeal ("First DCA") affirmed the judgment on August 16, 2013.  ECF Doc. 14-4 at 56.  It became

---

[1] A.B. reported to authorities that on December 8, 2009 she had been forced through fear that she "would be violently attacked" to have simultaneous sex with Tyson, then thirty-six (36) years old, and the sixteen-year-old son of the couple that Tyson was living with at the time.  ECF Doc. 14-1 at 40 (Probable Cause Affidavit).

final ninety (90) days later, on November 14, 2013. *See Chavers v. Sec'y, Fla. Dept. of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("the entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review, within the meaning of Supreme Court Rue 13.3 and 28 U.S.C. § 2244(d)(1)(A)"). Prior to the judgment becoming final, Tyson had also filed a 3.800(c) motion to correct his judgment, which the state court denied on December 19, 2013. ECF Doc. 14-4 at 74.

On March 10, 2014, Petitioner filed a thirteen-ground 3.850 motion, ECF Doc. 14-4 at 78. The 3.850 motion was denied on September 30, 2015. *Id.* at 141, After the 30-day deadline for appealing the denial of the 3.850 motion had expired, Tyson filed a petition for belated appeal with the First DCA on March 17, 2016. ECF Doc. 15-5 at 210. In the petition for belated appeal, Tyson claimed that he did not receive notice of the denial of his 3.850 motion until December 21, 2015. *Id.* at 211. The First DCA granted the belated appeal, by opinion dated November 4, 2016. ECF Doc. 14-6 at 68. The First DCA subsequently affirmed the denial of the 3.850 motion, and entered a mandate on November 20, 2018, ECF Doc. 14-5 at 208.

Tyson filed a habeas petition with this Court on August 12, 2019, by delivering the petition to prison mail officials. ECF Doc. 1. He subsequently amended his petition on or about September 13, 2019 (ECF Doc. 6), and the claims relate back to the initial filing. The amended petition asserts four (4) grounds for relief: (1) that Tyson is actually innocent of the offense because A.B.'s testimony is

not believable; (2) ineffective assistance of trial counsel ("IATC") for advising him not to testify; (3) IATC for failing to call two (2) alibi witnesses and another witness who would have testified that A.B. had a history of making false claims about sexual abuse; and (4) IATC for failing to impeach or suppress the State's introduction of DNA evidence because the DNA testing showed the evidence did not contain Tyson's DNA. *Id.*

## II.    TIMELINESS

Under 28 U.S.C. § 2244(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition must be filed within one-year of the latest of the following "trigger" dates:

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Additionally, the one-year period may be tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The Secretary moves to dismiss this action as untimely. ECF Doc. 14. According to the Secretary, the trigger date for Tyson's petition falls under § 2244(d)(1)(A); thus, for Tyson's petition to be timely, it must have been filed by April 3, 2019. ECF Doc. 14 at 12. As an initial matter, although the undersigned agrees the petition is untimely, the Secretary's calculation is incorrect.

First, although the Secretary recognizes that the AEDPA clock was tolled until Tyson's 3.800(c) motion was fully resolved, the Secretary failed to take into consideration the time 30-day period after Tyson's 3.800(c) motion was denied, during which he could have filed an appeal.[2]  *See Cramer v. Sec'y, Dep't of Corr.,* 461 F.3d 1380, 1383 (11th Cir. 2006) (a post-conviction motion is considered "pending" and tolls the AEDPA statute of limitations until it is fully resolved, which includes the time for filing an appeal, even if no appeal is filed). Thus, the AEDPA clock, ran from January 20, 2014[3] (rather than December 19, 2013) to March 10,

---

[2] *See Rogers v. Sec'y, Dep't of Corr.*, 855 F.3d 1274, 1278-1279 (11th Cir. 2017) ("A motion under Rule 3.800(c), Florida Rules of Criminal Procedure, tolls the limitations period for a federal habeas petition."); 28 U.S.C. § 2244(d)(2).

[3] Thirty (30) days from December 19, 2013 (when the circuit court denied the 3.800(c) motion falls on a Saturday, thus the date used for purposes of AEDPA calculation is the following Monday, January 20, 2014.

2014 (when Tyson filed his 3.850 motion), or for 48 days, (rather than 79 days calculated by the Respondent).

Second, the Secretary's calculation that 153 days expired from the time Tyson's Rule 3.850 motion was fully resolved on October 30, 2014 (which does include the 30-day appeal time for that motion) to March 17, 2016, when Tyson filed his petition for belated appeal[4] is incorrect. Rather, only 138 days expired between those two dates. Therefore, 186 days (rather than 232 days as the Respondent calculates) of un-tolled time had expired by the time the First DCA issued its mandate affirming the denial of Tyson's 3.850 motion on November 20, 2018. As the Respondent recognizes, because 2016 was a leap year Tyson gets one extra day to file his petition, giving him 180 days after November 20, 2018 of unexpired time within which to file his petition. ECF Doc. 14 at 12, n. 2. Accordingly, for the petition to be timely, it must have been filed by May 20, 2019.

Tyson does not express any disagreement in his response that if the trigger date falls under § 2244(d)(1)(A), his petition would be untimely. Instead, Tyson argues that the trigger date falls under § 2244(d)(1)(B) because the state created an impediment to his ability to timely file a petition. Namely, as discussed more below, Tyson argues that jail officials misplaced his legal materials, including a fully

---

[4] *See McMillan v. Sec'y for Dep't of Corr.*, 257 F. App'x 249, 252 (11th Cir. 2007) (the time between the expiration of the time to appeal an order denying a Rule 3.80 motion and the filing of a petition for belated appeal is not tolled, even if the appeal is ultimately allowed).

drafted and unsigned habeas petition, from September 11, 2019 to May 8, 2019. Thus, according to Tyson, May 8, 2019, is the proper trigger date.  ECF Doc. 20.

Additionally, Tyson argues that even if the Court were to find that the petition is procedurally barred, he should nonetheless be allowed to proceed with this action because he is actually innocent.  *See id.*  For the reasons which follow, the Court finds that Tyson's petition is untimely, that no state impediment prevented Tyson from timely filing his petition, and that he is not entitled to equitable tolling or reliance on the actual innocence exception to untimeliness.

## A.    The FDOC Did Not Create an Impediment to Tyson's Ability to File a Timely Petition

According to Tyson, on September 11, 2018, he was transferred from Calhoun CI to R.M.C. Lake Butler for a "medically necessary surgery."[5]  ECF Doc. 20 at 3. Prior to his transfer, he and law clerk inmate, Malcolm Hoswell, had drafted a completed federal 28 U.S.C. § 2254 petition, which just needed a signature from Tyson.  ECF Doc. 6 at 33-34.  Tyson claims that he sought but did not receive his legal work while he was at RMC.  ECF Doc. 6 at 34 (Tyson states in his petition that "while at RMC" he made "repeated attempts to find out what has happened to his legal work – to no avail – he met a stone wall at every turn.").

---

[5] The exact date of the transfer is unclear as Tyson states in his "notice" that he was transferred on September 11, but states in his grievance that he was transferred on September 8, 2019.  The exact date of the transfer, however, is not essential.

Tyson returned to Calhoun CI on February 12, 2019, and "immediately" spoke with Hoswell, who told Tyson he (Hoswell) had taken Tyson's legal materials, including the completed and unsigned § 2254 petition, to mail officials at Calhoun CI "immediately" after Tyson's transfer to RMC so they could to mail it to Tyson at R.M.C. *Id.* at 33-34, 36 (grievance). Upon learning this information, Tyson "immediately" asked Calhoun CI officials about the legal materials and was told by the property room sergeant that she did not have it, did not know where it was, and that it was not brought to the property room by the law clerk. ECF Doc. 6 at 34.

Tyson filed a grievance on February 19, 2019, relaying what he had been told by Hoswell and inquiring about his legal work, and specifically his "completed 2254 Fed. Pet. for habeas corpus". *Id.* at 36. A Calhoun CI official responded to the grievance stating that he/she would check with the property room sergeant and will "personally" look into it. *Id.* On April 10, 2019, a small box of some, but not all, of Tyson's legal materials was mailed from R.M.C. to Calhoun CI, ECF Doc. 6 at 38, and delivered to Tyson on May 8, 2019.[6] *Id.* The letter stated that "The above inmate transferred from Reception & Medical Center-Main Unit to your institution. At the time the inmate transferred, he left his legal material at RMC Law Library."[7]

---

[6] It is unclear whether the legal materials returned to Tyson on May 8, 2019, included the completed and unsigned habeas petition as Tyson appears to indicate it did not in his petition (ECF Doc. 6 at 34), but then appears to state in his response to the motion to dismiss, that it was included (ECF Doc. 20 at 4).

[7] As stated above, despite what is in the letter, Tyson contends that he never received his legal work while at RMC and, for purposes of this report and recommendation, the undersigned will accept Tyson's representation as true.

*Id.* Tyson argues that the FDOC's misplacement of his legal materials (or failure to return them to him) for nine (9) months "prevented" him from timely filing his petition for habeas relief. *Id.* at 1, 22; ECF Doc. 20 at 3-5.

For § 2244(d)(1)(B) to apply, a petitioner must show two things: (1) state action that "violat[ed] ... the Constitution or laws of the United States" and (2) that the state action "prevented [the prisoner] from filing" his federal petition. *Johnson v. Fla. Dep't Of Corr.*, 513 F.3d 1328, 1331–32 (11th Cir. 2008) (rejecting petitioner's argument that failure to appoint counsel or State's objection to production of certain documents met those elements). The undersigned finds that Tyson has failed to establish either of those elements.

First, like the petitioner in *Johnson, supra,* Tyson has failed to explain how the FDOC's misplacement of his legal materials rises to the level of a "violation of the Constitution or the laws of the United States." *See, e.g.*, *United States ex rel. Mueller v. Lemke*, 20 F. Supp. 3d 659, 666 (N.D. Ill. 2014) (rejecting application of § 2244(d)(1)(B) where state court clerk negligently provided petitioner's counsel with an incorrect date that led to the federal habeas petition being filed late because there was not "any evidence of violations of the Constitution or federal law"). Also, while Tyson states he was not given notice of the transfer or an opportunity to retrieve his legal work prior to the transfer, Tyson admits he was transferred to RMC for a "medically necessary surgery" and not based on a state action that violated the Constitution. ECF Doc. 20 at 3.

Second, Tyson has not shown (and cannot show) that the lack of his legal materials from September 11, 2018 to May 8, 2019, *prevented* him from timely filing his petition. Tyson does not say what in those legal materials were necessary for him to file a timely petition. *See Krause v. Thaler*, 637 F.3d 558, 561 (5th Cir. 2011) (finding § 2244(d)(1)(B) inapplicable where petitioner did not "at any point allege facts as to why the transfer facility's lack of legal materials prevented him from filing a timely habeas application"). Tyson does not say why he could not obtain those legal materials from other sources. Tyson does not say why he could not draft a new petition. *See Lloyd v. VanNatta*, 296 F.3d 630 (7th Cir. 2002) (rejecting petitioner's argument that the state court's failure to provide him with a transcript was an impediment under § 2244(d)(1)(B) because petitioner could have filed a petition even if he was unable to include every fact supporting the petition).

While courts have applied § 2244(d)(1)(B) to circumstances where a petitioner was denied access to legal information, generally, it is inapplicable here. This is not a situation where Tyson was denied access to AEDPA law or was unaware of the deadline. *See Egerton v. Cockrell*, 334 F.3d 433 (5th Cir. 2003) (finding State had created an impediment under § 2244(d)(1)(B), by failing to make the AEDPA available to the petitioner). Likewise, it is not a situation where petitioner was unaware that prison officials had failed to mail his petition. *See Critchley v. Thaler*, 586 F.3d 318, 319 (5th Cir. 2009).

To the contrary, Tyson knew prior to his transfer to RMC that he had not signed the § 2254 petition that had been prepared by the law clerk and had not been given a final copy to sign or send to the court. ECF Doc. 20 at 3. He and the inmate law clerk were also aware prior to his transfer to RMC of the AEDPA one-year limitation. ECF Doc. 6 at 34. Moreover, Tyson had almost three (3) months *after* returning to Calhoun CI to file a timely petition. And, he still had twelve (12) days after May 8, 2019, to file a timely petition. Tyson, thus, has not shown that he was prevented from timely filing his petition by a state impediment.

## B. Tyson Is Not Entitled to Equitable Tolling

Tyson also argues that he should be entitled to equitable tolling, specifically with regard to (1) the time in 2015 between when the state court had denied his 3.850 motion and when he first learned of the denial and (2) the period of time that his legal materials were unavailable to him. For the reasons set forth below, however, the undersigned disagrees.

A petitioner seeking equitable tolling must establish "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way" which prevented him from timely filing his § 2254 petition. *Lawrence v. Florida*, 549 U.S. 327, 335 (2007) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner.'" *Holland v. Florida*, 539 F.3d 1334, 1338 (11th

Cir. 2008), *overruled on other grounds by Holland v. Florida*, 560 U.S. 631 (2010) (quoting *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002)).

As an initial matter, even if the Court were to toll the statute of limitations for the 51-day delay between the date Tyson's 3.850 motion was fully resolved, on October 30, 2015, and the date he was provided notice of the denial, on December 21, 2015, his petition would still be untimely. Adding an extra 51 days to the limitations period would mean that Tyson's petition should have been filed on July 10, 2019 (not August 12, 2019).

Regardless, Tyson has not shown either due diligence or extraordinary circumstances. Tyson does not state that he took any action to learn of the denial of his 3.850 motion and has not shown that he was prevented from learning of the denial. *See Arthur v. Allen*, 452 F.3d 1234, 1251 (11th Cir.2006) (affirming district court's decision not to apply equitable tolling where petitioner failed to show he "had made any independent efforts to learn of the limitations period" and "had not demonstrated diligence in obtaining the status of his Alabama Supreme Court appeal"). Similarly, while Tyson states that he took action to learn of the whereabouts of his legal materials and unsigned petition while at RMC, there is no indication that Tyson made any efforts to draft another petition or obtain access to any other materials he might need to draft a new petition. There is further no indication that Tyson was prevented from working on his petition while at RMC, or certainly after February 12, when he returned to Calhoun CI.

Tyson could have "blunted" the effect of any impediment with the exercise of "garden variety diligence" by filing a petition by May 20, 2019, even if it would have needed to be amended later. *See Wood v. Spencer*, 487 F.3d 1, 7 (1st Cir. 2007) (denying equitable tolling based on lack of diligence). Tyson's lack of access to his own legal materials, without any indication of how those materials were pertinent to a habeas petition or could not be obtained elsewhere or replicated, does not show that some "extraordinary circumstance stood in his way" which kept Tyson from meeting the AEDPA deadline. *See Holland*, 539 F.3d at 1338.

### C.    Petitioner Is Not Entitled to the Actual Innocence Exception

Finally, Tyson argues that even if he missed the AEDPA limitations period, he should be allowed to proceed because he is actually innocent. ECF Doc. 6 at 22. A showing of actual innocence can serve as a gateway to consideration of constitutional claims otherwise time-barred under AEDPA's one-year limitation period. *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012). However, the Supreme Court has made clear that the opening of such a gateway should be exceedingly rare. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 329 (1995).

A claim of actual innocence requires a petitioner to "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.  All things considered; the evidence must undermine the Court's confidence in the outcome of the trial.  *Id.* at 316.  That is, "[t]o establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him.'"  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case."  *House v. Bell*, 547 U.S. 518, 538 (2006) (noting the standard is "demanding" and seldom met).

Tyson argues the following in support of his actual innocence: (1) A.B., the state's main witness, had been detained under Florida's Baker Act several times because of mental health issues; (2) A.B. admitted on the stand that she would lie, especially if it would get her what she wanted; (3) A.B. did not see that Tyson had a "body full of tattoos" and only mentioned she remembered he had one tattoo on his arm; (4) A.B. stated that there was nothing different or peculiar about Tyson's penis even though Tyson had a "pearl" nodule "the size of a cashew peanut" implanted just under the skin of his penis; (5) A.B. has made false claims of sexual abuse against no less than four other people; (6) there was lack of DNA evidence implicating Tyson.

Tyson's arguments, however, do not support a showing of actual innocence; none of the facts presented constitute "new reliable evidence."  *See e.g., Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) ("a claim of actual innocence must be based on reliable evidence not presented at trial").  Rather, the evidence Tyson seeks to rely on here were presented at trial or could have been presented at trial.  Tyson's arguments are essentially that the evidence presented at trial were insufficient to convict him, which cannot be the basis of an actual innocence exception.  *Moore v. Frazier*, 605 Fed. Appx. 863, 868 (11th Cir. 2015) (petitioner "has presented no 'new reliable evidence' showing that it is more likely than not that no reasonable jury would have convicted him of malice murder").

Tyson's first argument, that A.B. had been detained under Florida's Baker Act, is not new.  A.B. herself presented that evidence to the jury at trial.  She testified, "I had been Baker Acted many times, because my life situation gets very hard to handle.  And I was there because I threatened to kill myself."  ECF Doc. 14-2 at 87.

Similarly, Tyson's argument that he is actually innocent because A.B. has a propensity to lie is not new.  A.B. admitted to such in her testimony.  *See, e.g.,* ECF Doc. 14-2 at 71 (after admitting she lied about prior sexual episodes with the sixteen-year-old, A.B. was asked "Why did you lie about that?" and answered "I did not want people to think that I was a slut or – I was not very proud of having sex before marriage."), at 75 ("So I told my mother a lie saying my dad wanted to see me and wanted me to come over"), and at 95 ("Would you lie to be with him? To be with

him, yes."). Also, the mother of the sixteen-year-old boy who was also involved in the assault and pled guilty, testified that A.B. "was constantly lying, constantly trying to manipulate her mother." *Id.* at 51. Likewise, the boy testified that A.B. lied to his friends that he had gotten her pregnant and had falsely accused him of throwing rocks at her house. *Id.* at 205. Thus, A.B.'s history of untruthfulness was presented to the jury and the jury, nonetheless, still found Tyson guilty beyond a reasonable doubt.

Next, Tyson asserts that despite it being the middle of the day, A.B. "is on record" as stating that "she did not see that petitioner had a body full of tattoos (but) that she thinks she did see one tattoo on one of his arms but could not tell which arm." ECF Doc. 6 at 24. Tyson attaches several pictures of his body from the time of his arrest, showing tattoos all over his body. *Id.* at 39-46. Evidence of the multitude of tattoos on Tyson's was obviously available at trial and is not new. Additionally, Tyson does not specify in his amended petition or response to the motion to dismiss exactly where A.B. made a statement "on [the] record" about his tattoos, and her testimony at trial did not include any statement about tattoos. *See* ECF Doc. 14-2 at 69-111.

Moreover, even if this evidence were "new," Tyson would still not be entitled to relief because it does not raise sufficient doubt regarding Tyson's guilt as to undermine confidence in the jury's verdict. *See Arthur*, 452 F.3d at 1245. A.B. testified at trial that Tyson only undressed once he was in the darkened bathroom:

"We went into the bathroom. I took my clothes off. They took their clothes off. And it was dark." *Id.* at 82. She also testified that her sexual encounter with Tyson ended when she got out of the shower and left, and that no further sex with anyone happened that day after she left the shower. *Id.* at 99. Therefore, the only tattoos she saw in the light were tattoos not covered by clothing, such as on Tyson's arms. Her lack of knowledge of Tyson's other tattoos is therefore not particularly probative evidence that she was lying about having been with him.

Tyson next argues that A.B. must be lying about the encounter because A.B. testified that "there was nothing different or peculiar about petitioner's penis," and Tyson had a penile implant called a "pearl" inserted on the shaft of his penis before December 8, 2009, the date of the incident. ECF Doc. 6 at 24. This evidence was obviously known to Tyson at trial and is not new. In fact, as "proof" that he had the implant at the time of the offense, Tyson claims that his counsel questioned A.B. about whether there was anything unusual about Tyson's penis on cross-examination. ECF Doc. 14-2 at 98. Also, the fact that A.B. may not have noticed a lump on her assailant's penis does not call into question the jury's verdict. A.B. testified at trial, "I was going back and forth between them. It was a traumatic experience. I can't tell how long that he was in me or how long [the sixteen-year-old] was in me. My mindset wasn't who is on me and who's not. My mindset was, I want to get out of here." *Id.* at 97. Given the traumatic nature of the event, it is

not inconsistent with her testimony that A.B. did not notice the implant during the sexual encounter.

Tyson also argues that his actual innocence is shown by the fact that A.B. has made false claims of sexual abuse against no less than four other people. This accusation is not evidence at all, and even if it were, it is not new evidence. Tyson claims that he had a witness who would testify that A.B. had a "history of falsely accusing people of sexually abusing her." ECF Doc. 6 at 28. Thus, he admits that this evidence was available at the time of trial.

Finally, Tyson points to a lack of DNA evidence as supporting his actual innocence. However, the lack of DNA evidence is not new and was presented to the jury. The DNA expert testified to the jury that the DNA on a chair in the sixteen-year-old's room came from the sperm cells of the sixteen-year-old boy and the epithelial cells of A.B., and not from Tyson. *Id.* at 225. Also, the DNA expert testified at trial that she found sperm cells on A.B.'s underwear but could not extract any DNA profiles from them: "There was some semen present on the panties; however, there were very few sperm. And, therefore, I was not able to get a DNA profile from a sperm fraction." *Id.* at 227. Tyson's counsel revisited this point on cross, asking the expert "But because we only have so many sperm cells, we're not able to tell definitively whether it's [the sixteen-year-old boy's] or anybody else's semen on those panties; is that right?" The DNA answered, "That's correct." *Id.* at

231.  Not only is the evidence not new, but despite the evidence being presented, the jury still found Tyson guilty.

In sum, none of the arguments raised by Tyson, singularly or collectively, involve new evidence or come close to compelling the conclusion that this is the "extraordinary case" where a petitioner can show "it is more likely than not that no reasonable [trier of fact] would have convicted him." *Bousley*, 523 U.S. at 623 (1998).  Tyson clearly has not met the demanding standard in *Schlup*.  Therefore, he is not entitled to the actual innocence exception to excuse the untimeliness of his petition.

## III.    CONCLUSION

### A.    An Evidentiary Hearing Is Not Warranted

The undersigned also finds that an evidentiary hearing is not warranted.  In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Here, because the petition is untimely, an evidentiary hearing is not warranted.  Additionally, as to his claim of actual innocence, no evidentiary hearing is necessary because, as set forth above, Tyson was aware of the facts supporting his claim of actual innocence prior to the expiration of the statute of limitations period.

**B.    Certificate Of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.    That the State's motion to dismiss, ECF Doc. 14, be GRANTED and this case be DISMISSED WITH PREJUDICE as untimely.

2.    That a Certificate of Appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 11th day of August, 2020.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.